Argued January 8, affirmed January 22, 1958
IN THE MATTER OF THE ESTATE OF WILLIAM H. SMITH,
DECEASED

SMITH ET AL *v.* SMITH ET AL
320 P. 2d 275

*George M. Roberts,* Medford, argued the cause for appellants. On the brief were Roberts, Kellington & Branchfield, Medford.

*Walter D. Nunley,* Medford, argued the cause for respondents. With him on the brief was Allison Moulton, Medford.

Before PERRY, Chief Justice, and LUSK, WARNER and KESTER, Justices.

WARNER, J.

This is a will contest instituted in the matter of the estate of William H. Smith, deceased, challenging the validity of the instrument executed by the decedent on the first day of December, 1950, and, after his death on June 27, 1951, admitted to probate in Jackson County on the twelfth day of July, 1951. The three minor petitioners are the children of Cliff Smith, a deceased son of the testator. The defendants-respondents, Clyde Smith[1] and Lee F. Smith, are the surviving sons of William H. Smith and together with the contestants constitute all of the heirs at law of the testator. The minors appeal from an order dismissing their petition.

The petition of the contestants alleges that the will of 1950 is the product of "undue influence and as the result of fraudulent representations" made to the decedent by the brothers, Clyde and Lee Smith, and Lee's wife, Wilma Smith. No other ground is advanced to impeach the will's validity.

It is evident to this court, as it was to the trial court, that the moving cause for this contest finds its

---

[1] The defendant Clyde Smith died February 27, 1957, and after the filing of the instant appeal. Thereafter, Mildred Smith, as executrix of his estate, was substituted for Clyde Smith in his individual capacity and Lee Smith, as administrator c.t.a., was substituted for his brother in his capacity as executor of the estate of William H. Smith.

origin in the disappointment of the minor grandchildren because of their failure to receive the three government bonds to which reference is hereinafter made.

■ Fraud, when exerted upon a testator, is a species of undue influence and a will procured through that medium is void. *In re Estate of Elise Rosenberg,* 196 Or 219, 230, 246 P2d 858, 248 P2d 340; *Estate of Allen,* 116 Or 467, 474, 241 P 996; 94 CJS 1068, Wills § 224.

The contestants in their brief claim that the alleged fraud practiced upon the testator consisted of leading him to believe that the three government bonds, described in the will's Fourth article, "were part of his estate which could be delivered and turned over to" the three minor children of his deceased son, Cliff Smith.

To better understand this claim, it is necessary that we give some attention to the will of October 27, 1948, and the circumstances attending its execution. At that time William Smith was about 79 or 80 years old, not in good health and recovering from an operation for the removal of cataracts which thereafter impaired his vision. He was then at the home of his son Lee and his wife, Wilma, in Applegate, Oregon, and near the premises devised. At his request, Mr. Allison Moulton, an attorney, of Medford, Oregon, who had served him professionally for many years before, was called for the purpose of drawing his last will and testament. Apparently, the provisions were fully discussed by Mr. Smith with his sons Lee and Clyde and Lee's wife, because when Mr. Moulton arrived, the testator knew precisely what he wanted and there was little for the attorney to do except to draw the instrument accordingly. This he did while there, having

brought a typewriter and his secretary with him in anticipation of what would be required. Present at the execution, besides the attorney and his secretary, were the sons, Wilma, his daughter-in-law, and a neighbor, Mr. Byrd. No challenge is made concerning the validity of the will of 1948 or the regularity of its execution.

At the same time, the sons executed a writing, not in evidence, wherein they agreed to take care of their father during his remaining days. Because of the non-income character of his estate, he desired to preserve the real property against the necessity of a sale for his support and maintenance.

The will of that year included three provisions which we must notice because of their bearing on the 1950 will, the subject of the contest. The decedent's estate at that time, as in 1950, consisted almost solely of his ownership of 190 acres of land, appraised at the time of his death at $5,000. He had no cash or other personal property of value except some farm tools and a 1937 automobile which all together were appraised at $500. The land was roughly divided into two parcels by what is known as the Applegate Highway. The 1948 will gave all land lying north of the highway to his son Lee, plus a small parcel of bottom land consisting of one and one-half to two acres and contiguous to the parcel south of the highway. The balance of the land south of the highway was devised to his son Clyde. The descriptions for this purpose were apparently agreed upon by the brothers and approved by their father and, therefore, followed by Mr. Moulton when he drew the will. The 1948 will also directed that the sons act as joint executors.

The third feature of the 1948 will is the one of

greatest interest and constitutes the nub of the contest. It was the Fourth article, reading:

> "Fourth: I give and bequeath unto the three minor children of my deceased son, Cliff Smith, namely Larry age 11 years, Linda age 9 years, and Leland age 8 years each a One Thousand Dollar War Saving's Bond to be placed in trust for said children and held for a period of ten years and then delivered to said children or their lawful guardian."

The contested will of 1950 is precisely in the terms of the will of 1948, except in the following particulars: (1) it devised to his son Lee all of the land north of the Applegate Highway, and to his son Clyde all of the ranch south of the highway, including the small parcel previously given to Lee; and (2) it nominated Clyde as the sole executor of his estate.

The foregoing Fourth article of the 1948 will was repeated in the 1950 will exactly as it appears above. Upon executing the last will, the testator directed that the will of 1948 be destroyed. This was done by Mr. Moulton in his presence by burning it.

The testator in 1950 was then and for sometime before, making his home with his son Clyde and his wife on the farm of the decedent who were caring for him in his last years. Again, at Mr. Smith's request, Mr. Moulton was called to draft the last will. Mr. Smith gave the attorney as his reasons for the change, the fact that the two sons did not get along well together and he felt that the highway was a better dividing line between them under the circumstances. No one disputes the existence of this ill-feeling between the brothers nor that this was the prime cause for the changes made between the 1948 will and the 1950 will.

We now revert to the Fourth article relating to the three minor contestants. In 1948, at the time of execut-

ing the first will, the testator neither owned nor had in his possession any government bonds of any kind nor the wherewithal necessary for their acquistion, nor did his position in this respect change between the date of the first will and the date of his death. Thus, reading the Fourth article literally, it is a testamentary nullity, in that it purports to bequeath property in which Mr. Smith had no title. This is conceded in the brief of the appellants. If it has any value at all, it is as an avoidance of a pretermission of the children of his deceased son, Cliff, as his heirs (ORS 114.250), or it may stand as partial evidence of the agreement to which we now refer, but in no event was it essential to the validity of the agreement made with reference to those bonds in 1948.

The trial court found that sometime in October, 1948, the decedent entered into an oral agreement with his sons and Lee's wife, whereby three $1,000 United States savings bonds were to be purchased by Lee and Wilma Smith and held in trust for the decedent's three grandchildren in consideration of decedent's devising a certain portion of the estate to the said Lee Smith, and naming him as a joint executor of the Smith estate. This conclusion is substantiated by the testimony of Clyde Smith and the statements of Lee Smith found in his petition earlier addressed to the court in this estate matter for an order requiring the executor to file his final account and for a holding that the three $1,000 bonds were not the property of the estate. In this petition he states as his reason for refusal to deliver the bonds purchased by Wilma Smith is because "under the terms of which [the 1950 will] he decreased the amount of the estate left to petitioner under the earlier Will."

The record supports the finding of the trial court

that Wilma Smith, after the execution of the will of 1948, purchased three $1,000 United States savings bonds and later exhibited them to Mr. and Mrs. Martin McDonough, friends of the decedent, whom he had sent to her for the purpose of ascertaining if she, in fact, had secured such bonds. The McDonoughs later, and shortly before the making of the 1950 will, reported to Mr. Smith the result of their inquiry. We find nothing to suggest that the testator ever believed that he owned the bonds in question or even sought possession of them. His interest was apparently limited solely to an assurance that the bonds had been acquired pursuant to the agreement of 1948. This was accomplished by the inquiry made by the McDonoughs at his request.

The testimony produced by the contestants reveals that the agreement relative to the bonds was made shortly before the will of 1948 was drawn by Mr. Moulton. He disclaimed any knowledge of its details and expressed doubt that there was a valid agreement, which, if believed by the court, would exonerate Mr. Moulton from any failure on his part to have advised the testator as to the possible impact, legally speaking, of the changes in the 1950 will on the agreement of 1948. He did say, however, that "They [the bonds] were to be left with me, and then turned over [to the children after decedent's death]. I didn't like the arrangement too well so far as I was personally concerned, because I didn't like to hold them, but that was his [the decedent's] idea as to what he wanted done." This request that Moulton act as custodian was made after the 1948 will was drawn and probably the same day. The bonds purchased by Wilma Smith were, however, never delivered to him.

It is clear to us that the provisions found in the will of 1948 favorable to Lee were inserted pursuant

to an agreement that Lee's wife, not a beneficiary, would purchase government savings bonds for the benefit of Cliff's children, which in due course would mature at an aggregate value of $3,000, and that in making the will of 1950, the decedent was laboring under a mistake of fact if he thought he had the disposition of the bonds.

■ Even when we take into account the confidential relations subsisting between the father and his sons, we find nothing in the record warranting a conclusion that the testator labored under any species of undue influence by Clyde or Lee or Lee's wife, Wilma, as alleged in the petition of the contestants, in drawing his will of 1950 in the manner he did, nor do we find that he was subjected to any fraud perpetrated by them or any other person. Neither Lee nor his wife was present at the execution of the last will and they knew nothing about it until later. They did not profit by the change. Moreover, the slight advantage accruing to Clyde under the 1950 will would hardly tempt him to subject the testator to fraudulent representations in order to induce that change. Clyde had no obligations under the agreement to buy bonds for Cliff's children. His net increased benefits under the 1950 will, at best, were only one and one-half to two acres of land which were a part of the 190 acres of the ranch, appraised at $5,000, and a small additional fee for administering his father's modest estate. This is emphasized when we recall that his fraud if discovered would invalidate the will and thereby expose him to a substantial loss over what he would otherwise take. Such would result by reason of the fact that if invalidated, his brother Cliff's children would be let into a third of this very modest estate. Of perhaps less importance, is the fact that so far as contestants are

concerned, the Fourth article relating to them or the agreement made in their behalf remained undisturbed by the execution of the 1950 will.

An essential characteristic of every will, whether a joint or individual will, is that it remains ambulatory during the testator's lifetime. Although a contract to make a will is irrevocable, the will which was executed pursuant to it, is revocable. It, therefore, follows that if the revocation or modification on the part of the testator is of a character that works a breach of the terms of the original contract, any party in interest who suffers thereby has a remedy in a suit on the breached contract in a proper forum other than a probate court. *Florey v. Meeker,* 194 Or 257, 277, 240 P2d 1177; *Van Vlack v. Van Vlack,* 181 Or 646, 666, 668, 182 P2d 969, 185 P2d 575; *In re Burke's Estate,* 66 Or 252, 256, 134 P 11; 94 CJS 899, Wills § 127(2).

Our conclusions leave to the contestants the right to pursue in a separate action such remedies, if any, as they may have under the agreement of 1948.

Each party to bear his own costs.

Affirmed.