Susan McBAIN, Administratrix of the Estate of John Maynard Savage, Deceased, Appellant,

v.

Henry S. PRATT, Trustee of the Savage Children's Trust, Appellee.

No. 1632.

Supreme Court of Alaska.

Oct. 4, 1973.

---

824

William H. Jacobs, Anchorage, for appellant.

David H. Bundy & Michael G. Briggs, of Ely, Guess & Rudd, Anchorage, for appellee.

Before RABINOWITZ, C. J., BOOCHEVER, J., and Superior Court Judge THOMAS B. STEWART.

RABINOWITZ, Chief Justice.

This appeal concerns issues arising from an alleged breach of contract to make a will.

On October 10, 1969, John Savage and his wife Emily executed a separation agreement. Under that agreement, John Savage promised to bequeath to a trust for the benefit of the Savage children either the agreed extant value of his law practice, or the law practice itself.[1] The parties

---

1. The relevant provisions of the separation agreement read as follows:

   *Husband's Will.* The husband agrees that as regards all his substantial property, both real and personal, not presently transferred to the trust heretofore mentioned and incorporated herein, more specifically his interest in his law practice, the 1961 Super Cub Airplane and the automobiles, a present value for the same shall be established by the parties and incorporated herein as Exhibit D, and the husband's will shall contain a pour over provision containing this property or its agreed value, pouring the same over to the trust heretofore mentioned and incoporated [sic] herein. The husband further agrees that if the wife shall predecease him he will name in his will his brother, Llewellyn T. Savage, Jr., of Albuquerque, New Mexico, as guardian of the

agreed that the current worth of the law practice was $42,000. On the day the Savages entered into their separation agreement, John Savage executed his will and created a trust for the benefit of the three children. Both instruments were incorporated by reference into the separation agreement. In his will John made the following declarations of testamentary intention:

FIRST: I direct that all my lawful debts, the expenses of my last sickness and burial and of the administration of my estate be first paid, and subject thereto.

SECOND: I give, devise and bequeath all of the residue and remainder of my estate, of whatever kind or character and wherever situate, of which I die possessed or to which I may in any manner be entitled, whether real, personal or mixed, unto my children, KARYN SAVAGE, ADRIANNE SAVAGE and JANET SAVAGE in trust under a trust instrument dated the 10th day of October, 1969, and known as the Savage Children's Trust; except that first I leave to EMILY GIERASCH SAVAGE, the fair market value of [sic] my death of my 1961 Super Cub airplane plus enough other moneys from my estate to total the sum of $10,000.

Apparently in quick succession after the execution of the separation agreement, John and Emily Savage were divorced,[2] and John married the appellant, Susan Savage McBain.[3] On April 20, 1970, John Savage executed a new will in which he made the following provisions:

FIRST: I direct that all my lawful debts, the expenses of my last sickness and burial and of the administration of my estate be first paid, and subject thereto.

SECOND: I give, devise and bequeath all of the residue and remainder of my estate, *with the exception of any proceeds from the law practice currently conducted by me* under the firm of Savage & Curran, Inc., at Suite 310, 1016 West Sixth Avenue, Anchorage, Alaska, and the proceeds from any other law practice heretofore conducted by me under any firm name whatsoever, of whatever kind or character and wherever situate, of which I die possessed or to which I may in any manner be entitled, whether real, personal or mixed, unto my children, KARYN SAVAGE, ADRIANNE SAVAGE and JANET SAVAGE in trust instrument dated the 10th day of October, 1969, and known as the Savage Children's Trust.

*I give, devise and bequeath all proceeds, either net or gross, from the law practice currently conducted by me under the firm name of Savage & Curran, Inc., and the proceeds, either net or gross, from any other law practice heretofore conducted by me unto my wife, SUSAN R. SAVAGE.* I exclude the proceeds from any law practice, either currently conducted by me or heretofore conducted by me, because of the love and affection I bear for my wife, SUSAN R. SAVAGE, and knowing, in the event it becomes necessary, said SUSAN R. SAVAGE would utilize the proceeds of said law practices for the use and benefit of my children heretofore named. I do not in any manner whatever by the use of this language, which is precatory and not mandatory, mean to impose any trust, either express or constructive or implied, upon the proceeds of my law practice or previous law practices, but leave said law practices completely and solely to my beloved wife, SUSAN R. SAVAGE. (Emphasis supplied.)

minor children of the parties. A copy of said will is attached hereto and incorporated herein as Exhibit F and the same may not be changed except by permission of the Superior Court, Third Judicial District, State of Alaska.

2. The superior court incorporated the separation agreement into the divorce decree.

3. Savage's widow, the appellee, remarried after John Savage's death.

John Savage died on May 4, 1970. His widow was appointed administratrix of his estate, and the will which Savage executed on April 20, 1970, was admitted to probate.

Henry S. Pratt, the trustee of the Savage Children's Trust, commenced this action against the administratrix, Susan Savage McBain, to impress a constructive trust on "the proceeds of the law practice," claiming that by leaving the law practice to his widow, Savage broke his agreement to leave the children's trust either the agreed value of the practice, or the law practice itself. Pratt moved for summary judgment pursuant to Rule 56 of the Alaska Rules of Civil Procedure. The superior court found that there was no genuine issue of material fact, and awarded judgment to the trustee. The court declared that the provision in Savage's second will which left the proceeds of his law practice to Susan Savage McBain was of no force and effect; that the trustee be made a creditor of the estate to the extent of the proceeds of the law practice; and ordered that a constructive trust for the benefit of the children's trust be impressed upon the estate. From that judgment, the administratrix, Susan Savage McBain has appealed.

■ An individual may make a valid, binding contract to devise or bequeath property in a specified manner.[4] A contract to make a bequest or devise cannot be performed until the death of the promisor, although the promisor must during his life provide in his will for satisfaction of the contractual obligation. If the promisor dies and through his will does not make the agreed testamentary gift, a breath of contract occurs.[5] A will, however, is changeable during the life of the testator and inoperative until his death; prior to death it is entirely revocable and may be superseded or amended at any time.[6] Any will is revocable, including one executed in performance of an irrevocable contract.[7]

By his will of April 20, 1970, Savage revoked the will of October 10, 1969. Pratt does not challenge the validity of the second will, although he does contend that Savage failed to discharge his contractual obligation to bequeath either the practice or its agreed value.

■ In the April 20 will, Savage failed to provide for the testamentary transfer of either the law practice or its agreed value to the children's trust. Savage's failure to carry out the performance contemplated in the separation agreement constituted a breach of contract. To that extent, we agree with the judgment of the superior court. But on the matter of damages, we find that the trial court erred in holding that the trust should be made a creditor of the estate "to the extent of the value of any proceeds" of the law practice.

■ Under his separation agreement with Emily, Savage engaged to make either a specific legacy of the value of the practice at the time of the agreement—$42,000—or bequeath the practice itself (presumably the proceeds from its liquidation). Savage could have discharged his obligation by performing either alternative. However, by leaving the proceeds of the practice to his second wife and the residue of his estate to the children's trust, he did neither.

■ Where a promisor has agreed to alternative performances, and there has been a breach of contract, the measure of dam-

4. Moumal v. Walsh, 9 Alaska 656, 660 (1940); Brooks v. Yarbrough, 37 F.2d 527, 531 (10th Cir. 1930); In re Robertson, 151 Cal.App.2d 209, 311 P.2d 573, 577 (1957); Klockner v. Green, 54 N.J. 230, 254 A.2d 782, 784 (1969). See generally, 1 W. Bowe and D. Parker, Revised Page on Wills, § 10.1 (1960).

5. Ludwicki v. Guerin, 57 Cal.2d 127, 17 Cal. Rptr. 823, 367 P.2d 415 (1961); Quayle v. Mackert, 92 Idaho 563, 447 P.2d 679

(1968); 1 Bowe and Parker, supra n. 4, § 10.20, at 487–488.

6. Cook v. Cook, 17 Cal.2d 639, 111 P.2d 322, 326 (1941), Tutunjian v. Vetzigian, 299 N.Y. 315, 87 N.E.2d 275, 277 (N.Y.1949).

7. Collord v. Cooley, 92 Idaho 789, 451 P.2d 535 (1969); In re Smith's Estate, 212 Or. 481, 320 P.2d 273 (1958). See 1 W. Bowe and D. Parker, supra, § 10.3.

ages is the value of the least onerous alternative.[8] According to Professor Corbin:

An alternative contract is one in which a party promises to render some of two or more alternatives performances either one of which is mutually agreed upon as the bargained-for equivalent given in exchange for the return performance by the other party . . . . If the option is in the promisor, he has the power to discharge his contractual duty by performing either alternative. Such performance by him is a full and complete discharge of his primary contractual duty . . . . The breach of such a contract consists either in a repudiation of his contractual duty by the promisor or in his failure to perform any and all of the alternatives provided in the contract. *For such a breach the measure of damages recoverable by the promisee is the value of that alternative that is the least burdensome and expensive to the promisor.*[9] (Emphasis added; footnote omitted.)

Similarly, the Restatement of Contracts provides:

The damages for breach of an alternative contract are determined in accordance with that one of the alternatives that is chosen by the party having an election, or, in case of breach without an election, in accordance with the alternative that will result in the smallest recovery.[10]

The parties agreed that the value of the law practice exceeds $42,000. Consequently, unless Savage irrevocably elected to bequeath the law practice, the proper measure of damages is $42,000.

Under neither will did Savage elect the more expensive alternative. Under the October 10, 1969, will, after first providing $10,000 for his wife, Savage left "[a]ll of the residue and remainder" of his estate to the trust for the children. Similarly, under the will of April 20, 1970, Savage again provided that the trust be entitled to the residue of the estate, but made a specific gift of the proceeds of the law practice to his wife Susan. Each will expressed only an intention to leave the residue of the Savage estate to the children, after certain specific bequests were first made. The portion of the estate which the children's trust would take under either will would be a function of the total worth of the estate, the claims of creditors, the costs of administration and the amount of prior specific legacies. Although the residue of the Savage estate under either will could conceivably have exceeded $42,000, or the value of the proceeds of the law practice, Savage had no way of knowing at the time the wills were executed that such would be the case. We therefore conclude that Savage made no election between the alternative performances.

Since there was no election, the trust is entitled to damages measured according to the least onerous alternative, which in this case is $42,000, the agreed value of the law practice at the time of the separation agreement. Therefore, we hold that it was error for the superior court to impress a trust upon the estate for the value of proceeds of the law practice.

We note that under the terms of the separation agreement, Savage promised not to change the will of October 10, 1969 "except by permission of the Superior Court, Third Judicial District, State of Alaska." Savage neither sought nor received the superior court's approval before executing the will of April 20, 1970. The trustee maintains that because Savage did not receive the permission of the superior court to revoke the will of October 10, 1969, the

8. 1 Williston on Contracts § 1407, at 593 (3rd Ed. 1968) ; 5 Corbin on Contracts § 1079 at 454 (1964) ; Restatement of Contracts § 344 at 565; Branhill Realty Co., Inc. v. Montgomery Ward & Co., 60 F.2d 922, 923 (2d Cir. 1932).

9. 5A Corbin on Contracts § 1079, 453–454 (1964).

10. Restatement of Contracts, § 344 at 565 (1933).

trust is entitled to damages equivalent to the value of the law practice, which, according to the trustee, Savage bequeathed the trust under the will of October 10, 1969.

As we interpret the separation agreement, the parties provided for superior court review of changes in the Savage will in order to insure that Savage would make the agreed testamentary gifts. We do not read this provision as investing the superior court with the power to prevent Savage from changing his will, so long as the amended will provided for a testamentary disposition of Savage's property which complied with the separation agreement.

As we said in Green v. Koslosky,[11] "In awarding damages for breach of contract an effort is made to put the injured in as good a position as he would have been had the contract been fully performed."[12] Since we do not think that the superior court could have properly denied Savage permission to amend his will so long as Savage made the agreed testamentary gifts, the contract could have been fully performed by leaving either the agreed value of the law practice, or the law practice itself. Furthermore, since the contract could have been fully performed by leaving the trust $42,000, the less costly of the alternatives, we think that $42,000 is the proper measure of damages.

McBain alternatively argues on this appeal that the April 20, 1970, will satisfied the terms of the separation agreement because under the instrument creating the children's trust, Savage reserved the right to "alter, amend or revoke" the trust, and to "sell, borrow against or con-

vert any of the assets" of the trust during his lifetime.[13] The trust instrument was incorporated into the separation agreement. McBain contends that the trust provision giving Savage the right to revoke the trust or invade the corpus annulled the provision in the separation agreement requiring him to make a testamentary gift of either his law practice or its agreed present value to the trust.

We are not inclined to approve an interpretation of a contract which creates conflict among its provisions. Wherever possible, repugnant portions of a contract must be harmonized. An interpretation will not be given to one part of a contract which will annul another.[14] To accept McBain's construction of the revocation clause of the trust agreement, would deny effect to the provision in the separation agreement in which Savage engaged to make a testamentary gift to the children's trust of either the law practice or its present value. Although we do not speculate on Savage's motives for including the revocation provision in the trust instrument, we are unwilling to find that it was inserted for the purpose of giving Savage the power unilaterally to relieve himself of his contractual obligations. Further, it is doubtful that the parties to the separation agreement ever considered that a rather technical provision in the trust instrument would have the effect of undoing a portion of the separation agreement. We believe that the agreement expresses an intention to bind Savage to make the testamentary gift to the trust, and to the extent that the revocation provision reflects any intention to the contrary, we think that interpretation must give way.

---

11. 384 P.2d 951 (Alaska 1963).

12. *Id.*, at 952.

13. The trust instrument provides:
FIRST: John M. Savage reserves the right at any time or times to amend, alter or revoke this trust, in whole or in part, or any provision thereof by an instrument in writing signed by John M. Savage and delivered to the trustee in the lifetime of John M. Savage and during his mental and physical

competency and John M. Savage shall have complete power to sell, borrow against or convert any of the assets of this trust during his lifetime.

14. Keystone Fabric Laminates, Inc. v. Federal Ins. Co., 407 F.2d 1356 (3d Cir. 1969); *See* International Erectors, Inc. v. Wilhoit Steel Erectors and Rental Serv., 400 F.2d 465, 469 (5th Cir. 1968); LeBaron v. Crismon, 100 Ariz. 206, 412 P.2d 705, 707 (1966).

It is a fundamental rule in the interpretation of agreements that we should ascertain the prime object and purpose of the parties, and, in [the] case of ambiguity produced by its minor provisions, the latter should, if possible, be so construed as not to conflict with the main purpose.[15]

We therefore hold that the revocation clause in the trust instrument did not relieve Savage of his contractual obligation to leave the law practice or its value to the children's trust.

It follows from what we have said that the superior court erred by impressing a constructive trust upon all the proceeds of the Savage law practice, since the parties agree that the value of the law practice in the estate substantially exceeds the value of the practice at the date of the separation agreement. Accordingly, the superior court's judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

CONNOR, ERWIN and FITZGERALD, JJ., not participating.

BOOCHEVER, J., dissents.

BOOCHEVER, Justice (dissenting).

I reach a different conclusion with reference to the complicated problems of construing the property settlement agreement of October 10, 1969. If we were confronted solely with an agreement whereby John Savage had the option of bequeathing to his children's trust either his law practice or $42,000 (its agreed value as of October 10, 1969), I would join in the majority's opinion. The majority, however, disregards the fact that contemporaneously with the signing of the agreement a will was also executed, and that the property settlement agreement specified:

"A copy of said will is attached hereto and incorporated herein as Exhibit F and the *same may not be changed except by permission of the Superior Court,* Third Judicial District, State of Alaska." (Emphasis added.) The will which was thus incorporated in the agreement, after providing for payment of debts, for expenses of last sickness and burial and of administration, and for a bequest of $10,000, devised and bequeathed all of John M. Savage's estate to the children's trust. Thus the law practice rather than its agreed value of $42,000 was devised to the trust.

The agreement specified that the will could "not be changed except by permission of the Superior Court". Without obtaining such permission Mr. Savage changed the will by writing a new will which devised the law practice to his then wife, Susan.

That will, however, did not conform to the agreement in that neither the law practice nor its agreed value was devised to the trust. To sanction such a change in the will would constitute a fundamental modification of the property settlement agreement, not merely a change in the provisions of the will which would be in accordance with the agreement. The agreement required the written consent of Emily Savage (now Emily Kirkeby) for its modification.[1] To the extent that a modification of the *will* conformed to the property settlement agreement, it could be changed with "permission of the Superior Court". But since the April 20, 1970 will does not conform to the property settlement agreement, without Emily's consent the court could not have sanctioned it during John Savage's life; therefore, the court below correctly concluded that it could not posthumously ratify the provision devising the law practice to Susan.

---

15. Marx v. American Malting Co., 169 F. 582 (6th Cir. 1909), quoted in 4A Williston on Contracts § 619, at 733 (3rd ed. 1961).

1. Section III.H. of the Separation, Property Settlement and Custody Agreement of October 10, 1969 stated:

Modification and Waiver. A modification or waiver of any provision of this agreement shall be effective only if made in writing and executed by the same formality as this agreement after this agreement is signed.

The majority focuses solely on the breach of the agreement to devise either $42,000 or the law practice to the trust. Based on the recognized rule of law whereby in the event that there is a breach of contract providing for alternatives, "the measure of damages recoverable by the promisee is the value of that alternative that is the least burdensome and expensive to the promisor," they thus limit the amount recoverable by the trustee to $42,-000.

In my opinion, the majority has failed to give proper consideration to the additional breach of the contract provision prohibiting a change of the will without the consent of the superior court. The damages for that breach of contract must be measured in accordance with the principle that the injured party is to be placed in as good a position as he would have been in had the contract not been breached.[2] If there has been no breach of the agreement requiring court approval for a change of the will, the original will would have remained in effect. I thus conclude that the superior court did not commit error in awarding a summary judgment to the trustee decreeing him to be a creditor of the estate of John Maynard Savage to the extent of the value of any proceeds from the law practice, and impressing a trust on the proceeds therefrom.

The majority interprets the separation agreement "[to] provide for superior court review of changes in the Savage will in order to insure that Savage would make the agreed testamentary gifts." But such approval is entirely unnecessary for that

purpose as the agreement could not be modified without Emily's written consent. Accordingly, the only purpose of requiring court approval was to consider situations involving changes in the will which would still conform to the agreement. There is no other way to interpret the provision requiring court approval of the will without conflicting with the provision requiring Emily's written consent for a modification of the agreement.

I agree with the majority that we should not "approve an interpretation of a contract which creates conflict among its provisions. Whenever possible, repugnant portions of a contract must be harmonized. An interpretation will not be given to one part of a contract which will annul another." I submit, however, that only by the construction outlined above may the portion of the contract requiring court approval for a change in the will be harmonized with the provision requiring Emily's written consent for a modification of the terms of the agreement.

Admittedly this is a literal interpretation of the agreement. Yet no satisfactory reason is advanced for not giving a literal interpretation to the agreement. Such a construction gives effect to what was apparently the chief motivating consideration of the agreement on the part of both the Savages to see that ample provision was made for the children.[3]

Accordingly, I believe that this interpretation is the only one in accordance with the express intention of the parties. The original will, which was incorporated in

2. Green v. Koslosky, 384 P.2d 951, 952 (Alaska 1963).

3. Nor can I agree with the majority that the superior court "could not properly have denied Savage permission to amend his will so long as Savage made the agreed testamentary gifts." First, Savage's new will did not provide for the agreed testamentary gift of the law practice or its value to the trust. Even if the modified will had sought to make a change in accordance with the basic provisions of the agreement, not only would Emily have had the right to object, but also, in my opinion, the court would have been obligated to appoint a guardian *ad litem* for the children. Emily and such guardian could advance substantial arguments to the effect that the children should not be deprived of the value of the law practice previously provided for them in favor of a newly acquired wife. By referring to this consideration, I in no manner intend to reflect adversely on Mrs. McBain, who, as far as can be ascertained from the pleadings, was devoted to Mr. Savage during his life, and is devoted to the children.

the agreement, bequeathed the law practice to the trust, not the sum of $42,000.[4] The trust was placed in a position whereby if the law practice decreased in value, it would receive a lower sum. Similarly, if the practice increased in value, the trust for the children would benefit. Even assuming an attempt to amend the will in accordance with the other provisions of the agreement, Mrs. Savage was entitled to no-tice and the opportunity to argue before the superior court as to why such a change would not be equitable. Particularly where the amended will did not conform to the agreement there was a substantial breach of the contract; and, as indicated above, the damages for that breach should be measured by the provisions of the original will. Accordingly, I would affirm the judgment below.

4. Although the majority states that Savage made no "election" of either alternative in the 1969 will, it is not clear why the execution of the will which concededly would have had the effect of devising the law practice to the trust for the children was not an "election".