447 P.2d 679

Manx D. QUAYLE, Plaintiff-Respondent,

v.

Fred J. MACKERT, Administrator of the Estate of Emil Booth, Deceased, Defendant, and

Anna Buth, widow of Hermann Willy Franz Buth et al., Defendants-Appellants.

No. 10172.

Supreme Court of Idaho.

Nov. 25, 1968.

Nels T. Sahl, St. Anthony, for defendants-appellants.

Albaugh, Bloem, Smith & Pike, Idaho Falls, for plaintiff-respondent.

Ralph Litton, St. Anthony, for Fred J. Mackert, defendant.

McQUADE, Justice.

Plaintiff (respondent), Manx D. Quayle, brought this action against defendant Fred J. Mackert, administrator of the estate of Emil Booth, deceased, requesting the court to impress a trust upon certain real property of the estate, to force conveyance of title to the property to the respondent, and to quiet title in the respondent.

The subject of the controversy in this case is an eighty acre farm described as "Lots one and two of Section Seven, Township Seven North, Range Forty East of the Boise Meridian" Fremont County, located west of St. Anthony, Idaho, in the Egin Bench area. From about 1918 to 1932 this farm was owned by Ernest Quayle, the father of Manx D. Quayle (respondent). In 1932, respondent acquired title to the farm from his father. In 1934, Manx Quayle placed two mortgages totaling $6,-600 on the farm. By 1936, the Federal Land Bank of Spokane was threatening to foreclose on these mortgages.

Appellants, who intervened as parties defendant to the action, are relatives of Emil Booth, now deceased. Emil Booth emigrated from Germany to the United States and to Fremont County, Idaho, in 1905 and began farming with Ernest Quayle. Booth lived in the Quayle household and owned in partnership with the elder Quayle 320 acres of land separate from the farm here in question. From 1932 until his death in 1937, the elder Quayle was bedridden in Salt Lake City, Utah, and the 320 acres were lost by foreclosure in 1936. From 1932 to 1936 the farming operations were carried on by Emil Booth and Ernest Quayle's three sons, Joseph, Tom and respondent Manx Quayle. In 1936, with the 320 acres lost and the Federal Land Bank threatening to foreclose upon the eighty acres here in question, the Quayle brothers decided to break up the farming partnership and to go their separate ways.

Accordingly, the brothers sought to sell the eighty acre farm in order to pay off their farming debts. Joseph Quayle, on instructions from respondent Manx Quayle, offered the farm to Emil Booth, but Booth said to look elsewhere for a buyer first and to let him know what happened. Thereafter a neighboring farmer, one Dean Orme, offered to buy the eighty acres at $160 per acre by assuming the $6,600 mortgage and paying the $6,200 balance in cash.

Joseph Quayle was permitted to testify over appellants' objection that in the fall of 1936, he, Emil Booth and respondent Manx Quayle met in the farmhouse and agreed that despite this offer from Dean Orme, the eighty acres would be sold to Emil Booth for $11,000: $1,100 down, delivery of a purchase money mortgage for $3,300, and assumption of the existing mortgages of $6,600. Joseph Quayle was permitted to testify over appellants' objection that Manx Quayle accepted $1,800 less for the farm because Emil Booth said, "after I die it'll revert back to Pete [Manx Quayle]," and "[to keep the farm in the family] I'll leave it to Pete."

After this, the Quayle brothers went their separate ways. Respondent Manx

Quayle went to California, joined the Merchant Marine, and served in the Navy until 1946. In 1946, respondent returned to the Booth farm and farmed with Booth until 1966 when Emil Booth died intestate at the age of eighty-six.

The district court, sitting without a jury, found that the eighty acre farm was deeded to Emil Booth in 1936 in reliance upon his oral promise to devise the farm to Manx Quayle on his death; that the consideration for this promise was respondent's forbearance to accept Dean Orme's offer of $1,800 more than Booth could pay; that Manx Quayle performed his part of the oral bargain but that Emil Booth breached his part of this agreement when he died intestate on April 17, 1966, owning the farm in fee.

The district court concluded therefore that the farm could not pass by intestacy to Booth's heirs in West Germany but was held in constructive trust by Fred J. Mackert, administrator, for the benefit of respondent Manx Quayle. The district court ordered the farm conveyed to respondent.

Appellants assign various errors in the admission of evidence. The most critical of these involves the application of the so-called Dead Man's Statute to testimony of respondent's brother, Joseph Quayle. Appellants contend that the court erred in permitting Joseph Quayle to testify about the conversation among Emil Booth, Joseph Quayle and Manx Quayle at the farmhouse in the fall of 1936.

I.C. § 9–202(3) as amended by Sess. Laws 1965, ch. 113, § 1, p. 219, provides as follows:

"*Who may not testify.*—The following persons cannot be witnesses:

\* \* \* \* \* \*

"(3) Parties \* \* \* to an action or proceeding \* \* \* against an \* \* \* administrator, upon a claim or demand against the estate of a deceased person, as to any *communication or agreement, not*

*in writing,* occurring before the death of such deceased person." (Emphasis added).

Section 2 of Sess.Laws 1965, ch. 113, declared that "the amendment incorporated herein [italicized above] shall be applicable only to those claims or demands against the estate of a deceased person arising subsequent to the effective date of this act [, March 11, 1965]." The amendment displaced the words "any matter of fact."

We are thus presented with a preliminary question of which version of I.C. § 9–202(3) applies to this case. The answer to this question depends in turn upon when Manx Quayle's claim against the estate of Emil Booth arose. A contract to make a will is not breached until the promisor dies intestate.[1] Only then does a cause of action arise in the promisee, since only then is it certain that a will can never be made as promised. In the instant case, Emil Booth died intestate on April 17, 1966, after the effective date of the amendment to I.C. § 9–202(3). That is when respondent's claim against the estate of Emil Booth arose, and therefore I.C. § 9–202(3) as amended in 1965 applies to this case.

This statute expressly applies only to "parties or assignors of parties \* \* \* or persons in whose behalf an action \* \* is prosecuted." This class of persons is disabled from testifying. The terms include both parties as defined by the rules of civil procedure and real parties in interest. Joseph Quayle, though he is the brother of respondent Manx Quayle, is neither a party to this action nor a real party in interest. He has no economic interest in the farm which is the subject of this controversy. Until deeded to Emil Booth in 1936, the farm was owned by Manx Quayle alone. This action was not prosecuted on behalf of Joseph Quayle. It is true that Joseph Quayle would be interested in seeing his brother acquire the farm, but the statute does not disable those persons with a famil-

---

1. Ashbauth v. Davis, 71 Idaho 150, 155, 227 P.2d 954, 957, 32 A.L.R.2d 361 (1951); Casady v. Scott, 40 Idaho 137, 152, 237 P. 415, 420 (1924); Page, Wills § 10.20 (Bowe-Parker ed. 1960).

ial interest from testifying. Therefore, Joseph Quayle was properly allowed to testify as to any matter relevant to this controversy. Each and every case cited to us as authority for disabling "interested witnesses" from testifying applied the statute not against witnesses but against parties only.[2]

■ Appellants objected at trial to Joseph Quayle's testimony about Dean Orme's offer to buy the farm. Admission of this testimony is said to be contrary to I.C. § 9–202(3), but, for the same reason that the statute applies only to parties, this testimony also was properly admitted. Appellants objected to this repetition by Joseph Quayle of Dean Orme's offer to contract to purchase the farm as hearsay as well. But this objection was properly overruled because the hearsay rule does not apply to statements offered not for their truth but merely for the purpose of showing that certain words were spoken.[3] Thus, whether true or not, the offer of Dean Orme was admissible for the purpose of showing that Manx Quayle thought he had an offer which he might forbear to accept. The relation of this offer to the problem of whether there was consideration for Emil Booth's promise is discussed below.

■ Appellants also assign error to the court's admission of respondent's testimony as to "any matter of fact" occurring before the death of Emil Booth. Appellants contend that this was contrary to I.C. § 9–202 (3). Respondent Manx Quayle is admittedly a "party" under the statute. But we have already decided that the statute in its present form applies to this action. Therefore, respondent is disabled from testifying only about "any communication or agreement, not in writing," occurring before the death of Emil Booth. The district judge sustained appellants' objections to all of the questions put to Manx Quayle designed to bring out testimony on the agreement allegedly reached at the farmhouse in the fall of 1936. Thus, the statute was satisfied. A party is not prevented under the terms of I.C. § 9–202(3) from testifying as to matters of fact other than those relating to communications or agreements not in writing. All of appellants' cases cited to us for the contrary proposition are not in point because they construed the prior version of I.C. § 9–202(3) barring statements by parties "as to any matter of fact."[4] That version is not applicable to this case.

■ At the trial of this case, respondent Manx Quayle offered, and the court admitted, testimony of various neighboring farmers and businessmen to the effect that Emil Booth said he would leave the farm to Manx Quayle.[5] Appellants' counsel objected to all this testimony on the grounds of I.C. § 9–202(3) and remoteness, but as

2. Thomas v. Thomas, 83 Idaho 86, 357 P. 2d 935 (1960); Ferrell v. McVey, 71 Idaho 339, 232 P.2d 134 (1951); Johnson v. Flatness, 70 Idaho 37, 211 P.2d 769 (1949); Burns v. Skogstad, 69 Idaho 227, 206 P.2d 765 (1949); Thurston v. Holden, 45 Idaho 724, 265 P. 697 (1928); Kilbourn v. Smith, 38 Idaho 646, 224 P. 432, 41 A.L.R. 1042 (1924); Goldensmith v. Worstell, 35 Idaho 679, 208 P. 836 (1922); Coats v. Harris, 9 Idaho 458, 75 P. 243 (1904); Rice v. Rigley, 7 Idaho 115, 61 P. 290 (1900).

3. Wigmore, Evidence §§ 1770, 1772 (1940); McCormick, Evidence § 228 (1954).

4. See note 2, supra.

5. Frank Stegelmeier testified:
   "My dad asked [Emil] what he was going to do with all his property, and he said he was going to let Pete [Manx Quayle] have it"; Louis Stegelmeier testified: "Emil says, 'Well, I've always lived with the Quayle family, and I'm going to leave [the farm] with Pete'"; Oakley Hunter testified: "[Emil said,] 'eventually [Pete's] going to get this place.' 'I promised it to Pete,' 'I feel obligated to let Pete—see that Pete gets this place'"; Frank Tanner testified: "[Emil] says 'The farm is supposed to stay in the Quayle Family, supposed to go to Pete'"; Ronald Miller testified: "and Emil said, 'Well, I guess when I am through with [the farm], it belongs to Pete'"; John Gold testified: "[Emil said,] '[Pete] gets the farm.'"

these witnesses were not parties and as they were disinterested as well, the statute plainly does not apply. Nor can we say that the testimony was on matters too remote.

However, all of this testimony was offered for two purposes, namely, showing that Emil Booth made an oral contract to make a will at some time in the past and that he intended to carry it out. In relation to the alleged contract, these statements were mere parol evidence. These repeated statements of Emil Booth, who at the time of trial was deceased, contained on the one hand an implied assertion that he had in fact made an oral contract to will the farm to Manx Quayle. To this extent this testimony offered out-of-court declarations by a deceased person for their truth value. Therefore, this testimony was hearsay.[6] What Emil Booth declared before his death but after making the alleged contract is subject to questions of memory, perception, sincerity and narration. Booth may not have remembered all the details of the 1936 farmhouse meeting; he may not have completely understood his obligation; he may not have been completely honest in making the statements but rather might have made them only to keep the Quayles from bothering him about the farm; finally he might not have meant by his words exactly what the witnesses thought he meant. Because Booth was deceased, appellants' counsel had no way to refute respondent's witnesses by calling him to testify for himself.

Yet there is a growing body of authority, especially in the field of wills, which recognizes a special exception to the hearsay rule for statements made by someone who is deceased at the time of trial and regarding whether or not he had made a will at some time in the past and, if so, what it contained.[7] The present case is analogous to the will situations in that Booth's statements were offered to show that he had in fact executed a contract to make a will at some time in the past. Such statements have been admitted because it is difficult to get any other evidence; the person was not speaking for his own economic interest; the statements were made before any dispute arose; the declarant had peculiarly good knowledge of his own past acts. It should be noted, however, that most authorities have excepted from the hearsay rule declarations of states of mind for the purpose of showing past occurrences only when those occurrences are in some way peculiarly personal to the declarant.[8] Weighing these opposing considerations in this case, it appears that the admission of the testimony which in effect repeated assertions by Booth that he had made a contract was proper on this ground.

Even if this testimony was hearsay, appellants' counsel failed to object on that ground. The only grounds asserted for the objections was the so-called Dead Man's Statute, which was plainly inapplicable. We are constrained, however, to conclude that counsel for appellants, in fail-

6. Johnson v. Flatness, note 2, supra, 70 Idaho at p. 41, 211 P.2d at p. 771; cf. King v. Mac Donald, 90 Idaho 272, 278, 410 P.2d 969, 972 (1965); Wigmore, Evidence § 1362 (1940); Bell, Handbook of Evidence For the Idaho Lawyer 122 (1957), citing Frederick v. Brainard, 32 Idaho 296, 182 P. 351 (1919) and other authorities; Quick v. Quick, 3 Sw. & Tr. 442, 164 English Reports—Full Reprint (1220–1867) 1347 (1864).

7. This exception is based upon the opinion of Sir George Jessel, M.R., in Sugden v. Lord St. Leonards, L.R. [1876] 1 P.D. 154 at pp. 238–247 (C.A.); see Wigmore,

Evidence § 1736 Second Theory (1940) and McCormick, Evidence § 271 (1954) and cases cited.

8. See United States v. Annunziato, 293 F. 2d 373, 376–378 (2nd Cir. 1961) per Friendly, J.; Shepard v. United States, 290 U.S. 96, at pp. 103–106, 54 S.Ct. 22, 78 L.Ed. 196 (1933) per Cardozo, J.; Lloyd v. Powell-Duffryn Steam Coal Co., Ltd., L.R. [1914] App.C. 733 (H.L.); Mutual Life Ins. Co. of New York v. Hillmon, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892); Bell, Handbook Of Evidence For The Idaho Lawyer 131–132 (1957).

ing to make the hearsay objection, waived it.[9] Although hearsay is inadmissible, yet it has some probative value, and we are not prepared to say that the trial judge wrongly concluded upon all the evidence that the oral contract to make the will was in fact made.

We thus come to appellants' final assignments of error, namely, that the oral contract to will the farm was not supported by consideration, was invalid under the Statute of Frauds, and was not sufficiently definitely established.

■ Oral contracts to make wills have been criticized as promoting evasion of the cautionary policies embodied in the Statute of Wills.[10] Moreover, when the contract is one to devise real estate, it may allow evasion of the cautionary policies of the Statute of Frauds.[11] Despite these potentialities for abuse, however, it appears settled in the law that a contract to make a will is to be treated as valid and enforceable if it meets the requirements of the law of contracts.[12] The subject matter of the contract is treated as irrelevant so long as the formal requirements are met.

■ The evidence in the present case showed that Manx Quayle relinquished the power to accept an offer from Dean Orme to pay $12,800 for the farm and instead he accepted an offer from Emil Booth to pay $11,000. Manx Quayle's purpose in giving up a potential $1,800 was to keep the farm in the Quayle family by accepting Emil Booth's promise to make a will devising it back when he died. This forbearance by Manx Quayle was valid consideration.[13] Dean Orme testified on cross-examination that when he heard that the Quayles intended to sell the farm to Emil Booth he "just forgot about it." Appellants contend that this shows there was really no consideration for Booth's promise. However, to show consideration was given it is not necessary to show that one breached a pre-existing contract in favor of a later offeror. All that is necessary is to show forbearance to accept something he might have accepted. Furthermore, we fail to see why the conveyance of the farm itself is not good consideration for both the cash paid and the promise given by Booth to Quayle. The fact that a prior offer was $1,800 greater only shows what the promise to reconvey may have been worth. Moreover, the law normally does not inquire into the sufficiency of consideration.[14] On cases of specific performance in equity, however, there must be adequate consideration in order to insure overall fairness.[15] On the evidence, we cannot say the trial court erred in finding adequate consideration for Booth's promise.

Appellants also contend there was a failure of consideration. However, since Manx Quayle fully performed his part of the bargain by conveying the farm to Booth in fee for $11,000 on the terms agreed upon by them, there is no merit in this contention.

■ Appellants argue that this contract did not comply with the Statute of Frauds. However, since there was full performance

9. Gem-Valley Ranches, Inc. v. Small, 90 Idaho 354, 371, 411 P.2d 943, 953 (1966); Janinda v. Lanning, 87 Idaho 91, 96, 390 P.2d 826, 829 (1964); Emerson v. Quinn, 79 Idaho 358, 364, 317 P.2d 344, 348 (1957); Naccarato v. Village of Priest River, 68 Idaho 368, 372, 195 P.2d 370, 373 (1948); Chaney v. Gauld Co., 28 Idaho 76, 88, 152 P. 468, 472 (1915) (Morgan, J., concurring).

10. Chapter 3, Title 14, Idaho Code; see, e.g., In Re Fischer, 196 Wash. 41, 81 P.2d 836 (1938).

11. Chapter 5, Title 9, Idaho Code.

12. Page, Wills § 10.1 (Bowe-Parker ed. 1960).

13. Corbin, Contracts § 136 (1963).

14. Bates v. Capital State Bank, 21 Idaho 141, 159, 121 P. 561, 567 (1912); Corbin, Contracts § 127 (1963).

15. Anderson v. Whipple, 71 Idaho 112, 125, 227 P.2d 351, 359 (1951).

by Manx Quayle, the contract is enforceable in equity.[16]

Finally, appellants contend that the contract was not sufficiently definitely established to be enforced by the courts. The Idaho cases are in accord with most authorities to the effect that the oral contract to make a will must be certain in all material respects.[17] The purposes of this requirement are to guard against the potentialities for abuse mentioned above and to give the courts a definite basis upon which to render specific enforcement. In the present case, the contract was a very simple one involving a single promisee and a single promisor. Its subject matter was a specific piece of land clearly identified by the evidence. Under the authorities cited, the district court properly found that the contract was sufficiently certain to be specifically enforced.

Judgment affirmed. Costs to respondent.

SMITH, C. J., and TAYLOR, McFADDEN, and SPEAR, JJ., concur.

16. I.C. § 9–504; McMahon v. Auger, 83 Idaho 27, 357 P.2d 374 (1960); White v. Smith, 43 Idaho 354, 359, 253 P. 849, 850 (1926); Bedal v. Johnson, 37 Idaho 359, 218 P. 641 (1923).

17. McMahon v. Auger, supra, n. 16; Anderson v. Whipple, supra, n. 15; White v. Smith, supra, n. 16; Page, Wills § 10.5 (Bowe-Parker ed. 1960).