No. 92-392

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

DICK RAGLAND,

       Plaintiff and Respondent,

-vs-

WILLIAM F. SHEEHAN, JR.,

       Defendant and Appellant.

FILED

FEB 2 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

         Gary G. Broeder, Veeder & Broeder, Billings, Montana

      For Respondent:

         William J. O'Connor II, O'Connor & O'Connor,
Billings, Montana

Submitted on Briefs:  December 3, 1992

Decided:  February 2, 1993

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a judgment by the Thirteenth Judicial District Court, Yellowstone County, granting plaintiff Dick Ragland judgment for breach of contract in the amount of $35,000 plus costs and interest. We affirm.

We consider the following issues on appeal:

1. Did the District Court err in finding a contract existed between Dick Ragland and William Sheehan, Jr., in which Sheehan promised to pay $35,000 for the chance to consider participation in Ragland's hydroelectric project?

2. Did the District Court err in admitting testimony by Ragland and Doak concerning the Montana Power Company buy out for $35,000?

Dick Ragland (Ragland) owns a ranch in Carbon County, Montana. Water is plentiful on the ranch and in 1982 Ragland began exploring the possibility of using water for generating hydroelectric power from an existing artesian well known as the Ruckavina #2 well. In November 1984, Ragland obtained a Power Purchase Agreement with Montana Power Company (MPC) to sell the hydroelectric power which he hoped to generate.

Because Ragland's attempts to obtain financing were unsuccessful, Ragland and a financial consultant put together a bound document describing the Bluewater Hydroelectric Project (Book) as part of an application for a loan to develop the well. He then distributed the Book to various parties whom he believed to be interested in the project.

2

In the course of this distribution, William F. Sheehan, Jr. (Sheehan) received a copy of the Book in March 1987. After receiving the Book, Sheehan visited the Ragland ranch to view the proposed hydroelectric site and to discuss the merits of such a project with Ragland.

The following year in August 1988, MPC notified Ragland that it would terminate the Power Purchase Agreement unless Ragland signed an amendment to the agreement stating that the hydroelectric plant would be operational by October 1, 1989. Jon Doak (Doak), Ragland's attorney, notified Sheehan that Ragland needed to make some decisions concerning the hydroelectric project. Sheehan agreed to meet Ragland at Doak's office late in the afternoon of August 31, 1988, to discuss the project and Sheehan's participation in it. The meeting held in Doak's Billings office was attended by Ragland, Sheehan and Doak and lasted approximately one hour. There is no question that Sheehan was advised by Doak and Ragland that MPC had offered to buy out the Power Purchase Agreement with Ragland. At this time, Ragland also advised that he had problems with the Internal Revenue Service and needed money to pay taxes. No written agreement was prepared at the August 31, 1988 meeting.

At the conclusion of the meeting, Ragland telephoned a third party and left a message rejecting a contract buy out by MPC. Sheehan did not participate in the telephone conversation, nor was he aware of the identity of the third party.

Ragland testified that as a result of this meeting he believed that Sheehan had made an unconditional promise to pay Ragland

$35,000 on or before December 1, 1988, for an option to participate in the development of the hydroelectric project. Sheehan testified that he believed that the parties had agreed that if Sheehan's own evaluation of the project was favorable and the agreement was reduced to writing, that Northland Royalty Company, a corporation owned by Sheehan would pay Ragland the $35,000 on or before December 1, 1988, and then proceed to develop the project.

During September 1988, Doak drafted proposed Articles of Limited Partnership. These articles set forth what Doak believed to be the consensus of the August 31, 1988 meeting. The draft was shown to Sheehan in October 1988 and Sheehan found them to be unacceptable. In December 1988, Sheehan notified Ragland twice by mail that he would not participate in the project. Sheehan's letters claimed that he had determined that the project as designed was not feasible or capable of completion. Sheehan did not pay Ragland the $35,000.

Ragland then brought an action in District Court to recover damages from Sheehan for breach of an oral contract. A trial was held before the District Court sitting without a jury on November 15, 1990. On April 15, 1992, the District Court issued its findings and conclusions. The court found in favor of Ragland. Sheehan now appeals.

I

Did the District Court err in concluding that a contract existed between Dick Ragland and William Sheehan, Jr., in which Sheehan promised to pay $35,000 for the chance to consider participation in Ragland's hydroelectric project?

The District Court concluded that an enforceable contract existed between Ragland and Sheehan. The contract, according to the District Court, provided that Sheehan would pay $35,000 to Ragland if Ragland would reject MPC's buy out offer and execute a first amendment to the Power Purchase Agreement, which provided Sheehan a longer time to review the project in-depth. The court determined that Ragland executed an amendment to the purchase agreement and turned down MPC's offer. Sheehan, however, failed to perform his part of the contract which included payment of $35,000. Therefore, the court awarded Ragland the contract amount of $35,000 plus costs and interest.

Sheehan contends that there was no mutual consent of the parties and that each of the three parties left the August 31, 1988 meeting with a different understanding of what had happened. The proposed Articles of Partnership which were written after the meeting were unacceptable to Sheehan and he did not sign them; this prevented formation of any contract, according to Sheehan. Ragland counters that there were not three versions of what happened on August 31--Ragland and Doak both testified that Sheehan's promise to pay Ragland $35,000 was unconditional. Ragland argues that the promise to pay $35,000 was separate and distinct from any agreement to develop the hydroelectric project.

The standard of review for findings of fact in a civil case tried by a district court without a jury is whether the District Court's findings are clearly erroneous. Trad Industries, Ltd. v. Brogan (1991), 246 Mont. 439, 805 P.2d 54. This Court will

5

determine whether the findings of a district court are clearly erroneous by reviewing them to see if the findings are supported by substantial evidence. Interstate Production Credit Assoc. v. DeSaye (1991), 250 Mont. 320, 820 P.2d 1285. When the findings are supported, this Court will look to see if the District Court misapprehended the effect of the evidence; when the court has not so misapprehended, we may still find that although there is sufficient evidence to support the findings, a review of the record leaves the Court with the definite and firm conviction that a mistake has been committed. DeSaye, 250 Mont. at 323. Based on the evidence presented, the District Court concluded that a contract existed between Ragland and Sheehan obligating Sheehan to pay $35,000 to Ragland.

Ragland correctly contends that two possible contracts exist under the facts of this case. The first contract is the one argued by Sheehan, the agreement concerning the hydroelectric project and Sheehan's participation in it. The second contract, and the contract which concerns us, is the oral contract between Ragland and Sheehan concerning the $35,000 payment to Ragland. Sheehan argues that this oral agreement was not supported by consideration.

If an agreement contains a bargained-for exchange in legal positions between parties, the agreement becomes a legally enforceable contract. Nordwick v. Berg (1986), 223 Mont. 337, 725 P.2d 1195. It is not essential that consideration should impose a certain gain or loss to either party; it is sufficient that a party in whose favor the contract is made foregoes some advantage or

benefit. Nordwick, 223 Mont. at 341. Here, there is no question that Ragland told Sheehan that MPC had offered him $35,000 to buy out his Power Purchase Agreement and that he had to make a decision to accept the money or continue the project by 5:00 p.m. that day. The record establishes that all parties present at the August 31, 1988 meeting knew that Ragland needed money for tax debt. The record also shows that if Ragland turned down the MPC buy out offer, he needed to sign a first amendment to the original agreement designating a starting date for the hydroelectric project. All parties agree that Ragland made a telephone call and turned down the MPC buy out. Clearly, Ragland changed his legal position by foregoing the $35,000 from MPC with the understanding that instead of MPC Sheehan would pay him the $35,000.

The record indicates that Sheehan had already been to the Ragland Ranch to check the site and had possessed the Book about the project for some time. Sheehan was aware of Ragland's options and Ragland's need for money. The District Court concluded Ragland's refusal of MPC's buy out offer bound Sheehan to a contract under which Sheehan was granted time to further consider the project. The record establishes that Sheehan benefited by the four months' time he was given to evaluate the details of the project. However, after reviewing the project for the additional four months, he refused to participate in the project and refused to pay Ragland the $35,000.

Sheehan contends that a contract cannot exist because the facts do not indicate mutual consent, but that is not controlling.

7

An implied contract does not arise from the consent of the parties--it springs from principles of natural justice and equity, based on the doctrine of unjust enrichment. St. James Community Hospital v. Dept. of Social and Rehabilitation Services (1979), 182 Mont. 80, 595 P.2d 379. Unjust enrichment is an equitable doctrine wherein the plaintiff (Ragland) must show some element of misconduct or fault on the part of defendant (Sheehan) or that defendant somehow took advantage of plaintiff. Randolph v. Peterson, Inc. v. J. R. Simplot Co. (1989), 239 Mont. 1, 778 P.2d 879.

We hold the District Court did not err in concluding a contract existed between Ragland and Sheehan in which Sheehan promised to pay $35,000 for the chance to consider participation in Ragland's hydroelectric project.

## II.

Did the District Court err in admitting testimony by Ragland and Doak concerning the Montana Power Company buy out for $35,000?

The District Court determined that Ragland's rejection of the $35,000 MPC buy out offer was consideration for the oral agreement with Sheehan. Sheehan argues that there is no evidence to support such a buy out offer except Ragland's testimony that MPC offered it to him and Doak's testimony that Ragland told him about it. Both, according to Sheehan, are hearsay. Ragland contends his testimony and Doak's are not hearsay.

Ragland's testimony that MPC offered to buy him out for $35,000 if he decided by 5 p.m. on August 31, 1988, is not hearsay testimony. The testimony involves a "verbal act" pursuant to

M.R.Evid. 801. The verbal act was not MPC's offer of $35,000 but the act of Ragland's telling both Doak and Sheehan that the offer had been made and that Ragland stood to lose $35,000 if he chose to continue the Power Purchase Agreement and the hydro- electric project.

The Hearsay Rule does not apply to statements offered not for their truth but merely for the purpose of showing that certain words were spoken. Quayle v. Mackert (ID. 1968), 447 P.2d 679. The Quayle court considered the possible offer to buy a ranch and the effect that offer had on the estate of the deceased owner. The court stated:

> Appellants objected at trial to Joseph Quayle's testimony about Dean Orme's offer to buy the farm . . . Appellants objected to this repetition by Joseph Quayle of Dean Orme's offer to contract to purchase the farm as hearsay . . . But this objection was properly overruled because the hearsay rule does not apply to statements offered not for their truth, but merely for the purpose of showing that certain words were spoken. Thus, whether true or not, the offer of Dean Orme was admissible for the purpose of showing that Manx Quayle thought he had an offer which he might forbear to accept. . . .[Emphasis added.]

Quayle, 447 P.2d at 683. The Quayle reasoning is pertinent to the instant case and we herein adopt it as it concerns "verbal act" testimony.

In the case before us there was no issue as to whether MPC actually had offered $35,000 to Ragland. The record demonstrated that Ragland believed MPC had made an offer for $35,000 which he would lose if not accepted by 5 p.m. on August 31; and that he communicated that belief to defendant Sheehan as well as his lawyer

Doak. That communication by Ragland was a verbal act to which both Ragland and Doak properly testified.

In a similar case, this Court noted that when a statement goes to prove an operative fact of the alleged action, that statement is not hearsay. Phillip R. Morrow, Inc. v. FBS Ins. Montana (1989), 236 Mont. 394, 770 P.2d 859. In the Morrow case, the district court excluded a statement as hearsay testimony that the witness was told "Don't do Business with Morrow." In reversing, we stated that:

> The trial court should have admitted the . . . statement as non-hearsay under Rule 801(c), M.R.Evid., because the statement constitutes a "verbal act", in the sense that it goes to prove the operative facts of the alleged tort, i.e., pressuring Fisher. . . [It] is an operative fact which gives rise to legal consequences.

Morrow, 236 Mont. at 398.

We hold the District Court did not err by admitting testimony by Ragland and Doak concerning the MPC buy out offer of $35,000.

Affirmed.

_____<br>
Justice

We Concur:

_____<br>
Chief Justice

_____<br>

_____<br>

_____<br>
Justices

February 2, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


GARY G. BROEDER
Veeder & Broeder. P.C.
P.O. Box 1115
Billings, MT 59103

WILLIAM J. O'CONNOR II
O'Connor & O'Connor, P.C.
208 North Broadway, Suite 412
Billings, MT 59101


                                    ED SMITH
                                    CLERK OF THE SUPREME COURT
                                    STATE OF MONTANA

                                    BY:_____
                                         Deputy