No. 98-092

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 157

295 Mont. 110

983 P.2d 357

JAMES LARSON, FRED SCHAUER

d/b/a MAJESTIC HOMES, MAJESTIC

HOMES, INC., and GARY BENNER,

Plaintiffs and Appellants,

v.

GREEN TREE FINANCIAL CORPORATION,

Defendant and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellants:

L. Randall Bishop, Jarussi & Bishop; Billings, Montana

For Respondent:

David J. Dietrich, Damon D. Obie, Dietrich Law Offices;

Billings, Montana

Submitted on Briefs: June 25, 1998

Decided: July 8, 1999

No

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

**¶1. The plaintiffs, James Larsen, Fred Schauer, and Gary Benner filed a complaint in the District Court for the Thirteenth Judicial District in Yellowstone County in which they alleged that the defendant, Green Tree Financial Corp., breached its contract with them and engaged in tortious conduct which caused them damage. Green Tree filed a motion to dismiss by summary judgment, and the plaintiffs filed a cross-motion for partial summary judgment to establish the existence of a contract among the parties. After the parties briefed the contract issue, and after a hearing, the District Court granted Green Tree's motion and denied the plaintiffs' motion. Plaintiffs Larson and Schauer d/b/a Majestic Homes, and Majestic Homes, Inc. (collectively, "Majestic") appeal. We reverse the judgment of the District Court.**

**¶2. The dispositive issues on appeal are:**

**¶3. 1. Did the District Court err when it held that the parties' agreement did not constitute an enforceable contract?**

**¶4. 2. Did the District Court err when it dismissed the plaintiff's noncontract claims?**

## FACTUAL BACKGROUND

**¶5. James Larson and Fred Schauer are the owners of Majestic Homes, Inc., a Montana corporation based in Billings and engaged in the business of selling mobile homes. Green Tree Financial Corporation is a national mobile home financing company.**

**¶6. The undisputed facts are as follows. On September 10, 1992, Majestic executed and submitted to Green Tree a U.S. Department of Housing and Urban Development**

approved application, called a "Dealer/Contractor Application for Title I Property Improvement and Manufactured Home Loans." Majestic also signed a document which authorized Green Tree to investigate trade references and financial information. Green Tree approved Majestic as a dealer for purposes of FHA loans, and the parties executed a "Manufactured Home Dealer Agreement." The agreement defined the terms pursuant to which Majestic would convey financing agreements that Majestic had entered into with mobile home purchasers to Green Tree. Due to the nature of the mobile home sales business, it was a competitive advantage for Majestic to hold itself out as eligible to submit loan applications to Green Tree.

¶7. Prior to making the agreement, Green Tree was required by HUD regulations to determine whether Majestic's financial condition satisfied minimum standards for eligibility. That investigation involved significant inquiry into, among other things, the private financial and employment histories of Larson, Schauer, and their salespersons. Once Green Tree approved Majestic, it was required to supervise and monitor Majestic and to review its personnel on a semi-annual basis to assure compliance with HUD regulations. Majestic also had to annually resubmit an application to maintain its status as an approved dealer. In the agreement, Green Tree reserved the right to terminate Majestic's approved dealer status and its relationship with the dealership upon "any change in the management or ownership of [Majestic]."

¶8. Prior to 1990 Green Tree maintained a similar, if not identical, relationship with Destiny Homes, another Billings mobile home dealership owned by Larson and Gary Benner. After a number of difficulties with the company, including a potential HUD violation, Green Tree terminated that agreement. Benner also declared bankruptcy during this period. Based on this experience, Green Tree allegedly warned Larson, who is friends with Benner, that Green Tree would cease its relationship with Majestic if Benner ever worked for Majestic.

¶9. In June 1993, Benner began working as a salesperson at Majestic. When Green Tree learned of Benner's employment a short time later, it called Larson and stated that unless Majestic dismissed Benner, Green Tree would terminate the parties' dealer agreement and cease reviewing credit applications submitted by Majestic. Majestic refused to discharge Benner, and on July 15, 1993, Green Tree notified Majestic that it was withdrawing Majestic's approved dealer status. In November

1993, Green Tree sent a second letter to Majestic which stated that due to its right and duty to monitor the dealers with which it associates, and based on its past dealings with Benner, it could not continue the relationship with Majestic.

¶10. In February 1994, Larson, doing business as Majestic Homes, and Benner filed a complaint in the District Court of the Thirteenth Judicial District in Yellowstone County; it was later amended to include Schauer and Majestic Homes, Inc. The complaint alleged in Count I that Green Tree unlawfully discriminated against Benner, engaged in an unlawful restraint of trade, interfered with his profession, and engaged in unfair business practices with actual fraud or malice, when it forced Majestic to choose between firing Benner and losing its approved dealer status. Count II alleged that Green Tree engaged in unfair business practices and unfair restraint of trade with actual fraud or malice which caused damage to Larson and Majestic Homes. Count III alleged that Green Tree had damaged Larson's and Majestic's credit rating. Count IV alleged that Green Tree breached its contract with Larson and Majestic.

¶11. In December 1995, Green Tree filed a motion for summary judgment dismissing all claims. Green Tree asserted that the agreement was not legally enforceable as a contract because it lacked consideration and did not create a binding obligation for either party. It further argued that the tort claims were based on the underlying contract and should therefore also fail, and that the plaintiffs had failed to set forth the necessary elements for a common law claim of fraud. Finally, Green Tree argued that Benner's claim of discrimination, based on bankruptcy, was unfounded as a matter of law.

¶12. The plaintiffs, who, with the exception of Benner, had by then retained different counsel, filed a cross-motion for partial summary judgment regarding the existence of a contract among the parties. They relied on Green Tree's discovery responses, which referred to the agreement as a contract, and on the pleadings and the agreement itself.

¶13. The District Court first held that a bankruptcy discrimination claim based on 11 U.S.C. § 525 could not be made against Green Tree because it was neither Benner's employer nor a governmental entity. Next, it concluded that the agreement was founded on an illusory promise and failed to create either an obligation on behalf of Majestic to sell contracts to Green Tree or on Green Tree's behalf to buy from

**Majestic. It concluded that the agreement appeared to "serve as a mechanism for Majestic Homes to 'offer' to sell contracts to Green Tree." Finally, it held that the fraud claim could not proceed as a matter of law based on the lack of a legitimate underlying contract or bankruptcy discrimination claim. The District Court also referred to the "imprecise and general nature of the original complaint," and mentioned the lack of any specific allegations regarding the parties' tort claims. It held that none of the general contentions created claims, and accordingly, awarded summary judgment to Green Tree on all claims. Consequently, it also denied Majestic's cross-motion for partial summary judgment.**

**¶14. Benner did not appeal, and the District Court's award of summary judgment against him will not be considered.**

ISSUE 1

**¶15. Did the District Court err when it held that the parties' agreement did not constitute an enforceable contract?**

**¶16. This Court reviews appeals from summary judgment de novo, based on the same Rule 56(b), M.R.Civ.P. criteria applied by the District Court. *See Stutzman v. Safeco Ins. Co. of America* (1997), 284 Mont. 372, 376, 945 P.2d 32, 34 (citing *Treichel v. State Farm Mut. Auto. Ins. Co.* (1997), 280 Mont. 443, 446, 930 P.2d 661, 663). Thus:**

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove by more than mere denial and speculation that a genuine issue does exist. Having determined that genuine issues of material fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. [This Court] reviews the legal determination made by a district court as to whether the court erred.

*Stutzman*, 284 Mont. at 376, 945 P.2d at 34 (quoting Bruner v. Yellowstone County (1995), 272 Mont. 261, 264-65, 900 P.2d 901, 903).

**¶17. Majestic contends first that the District Court erred when it determined there was no enforceable contract because Green Tree conceded the existence of a contract in its discovery responses. However, "the existence of a valid express contract is a**

question of law to be determined by the court." *Scotland Vet Supply v. ABA Recovery Serv., Inc.* **(S.D. 1998) 583 N.W.2d 834, 836 (citations omitted).**

**¶18. Majestic and Green Tree each point to a specific phrase in the agreement as proof of their respective position that the agreement is or is not an enforceable contract.**

**¶19. Green Tree relies on the first sentence, which states: "We desire from time to time to sell you conditional sales contracts . . . evidencing the retail sale of mobile homes . . . on the following terms and conditions: . . . ." It asserts that the desire to sell "from time to time" is insufficient to create an obligation on the parties that requires Majestic to sell any contracts to Green Tree, and that therefore, the agreement is unenforceable for lack of consideration.**

**¶20. Majestic, on the other hand, cites the following paragraph:**

10. Upon your acceptance below, this shall constitute an agreement between us which shall inure to and bind us and our respective successors and assigns . . . .

Based on this language, as well as the other Majestic obligations which are clearly set forth in the agreement, Majestic asserts that the agreement clearly binds the parties and constitutes an enforceable contract.

**¶21. Section 28-2-102, MCA, provides:**

It is essential to the existence of a contract that there be:

(1) identifiable parties capable of contracting;

(2) their consent;

(3) a lawful object; and

(4) a sufficient cause or consideration.

**¶22. Good consideration consists of "[a]ny benefit conferred or agreed to be conferred upon the promisor by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person,**

other than such as he is at the time of consent lawfully bound to suffer." Section 28-2-801, MCA. "A written instrument is presumptive evidence of consideration." Section 28-2-804, MCA.

¶23. The District Court concluded that the contract failed for lack of consideration. It concluded that the agreement did not require Majestic to sell any contracts, nor Green Tree to purchase any contracts and that the consideration was therefore illusory. The Court concluded that the purported agreement at most constituted an "offer" by Majestic to sell contracts to Green Tree, and that the agreement bound Green Tree and Majestic Homes to the contract conditions only if Majestic Homes offered and Green Tree accepted separate and distinct contracts.

¶24. The District Court relied on the law of "requirements" contracts when it concluded that the contract lacked consideration. A "requirements" contract which lacks definiteness of quantity or exclusivity is illusory, because it lacks consideration. *See generally*, Restatement (Second) of Contracts § 77. The District Court concluded that, because of the lack of consideration, the agreement could at most be an offer.

¶25. The District Court, however, examined only the specific terms which were to be incorporated into sales of financing contracts between the parties. It correctly concluded that these terms were effective only at such time as Green Tree accepted each individual contract from Majestic, in effect creating a series of offers and acceptances which incorporated the terms of the dealer agreement. However, the dispute between the parties in this case is broader than a dispute over the terms of individual sales of financing agreements. Instead it concerns the agreement between the parties to act as dealer and lender for financing purposes. We conclude from our review of the record that Green Tree has failed to meet its burden to overcome the presumption of valid consideration, because the complete contract between the parties consisted of more than those terms in the agreement applicable to the finance contracts offered by Majestic and accepted by Green Tree.

¶26. When an agreement contains a bargained-for exchange in legal positions between parties, the agreement becomes a legally enforceable contract. *See Ragland v. Sheehan* (1993), 256 Mont. 322, 327, 846 P.2d 1000, 1003; *Nordwick v. Berg* (1986), 223 Mont 337, 341, 725 P.2d 1195, 1198. In *Ragland*, the bargained for exchange in legal positions occurred between the parties when the seller of a hydroelectric power plant site turned down an offer from one buyer in favor of an offer from a second

buyer. We concluded that this change in legal position constituted good consideration and established an implied contract between the seller and the second buyer. *See Ragland*, 256 Mont. at 327, 846 P.2d at 1003. In *Nordwick*, the appellant and respondent entered into an agreement which provided that the respondent would enter into a buy/sell agreement with a third party for the purchase of mining claims. Earnest money in the amount of $1500 would be provided to the third party by the appellant. The respondent agreed to then relinquish any surface rights to the appellant. The appellant argued that there was a failure of separate, orally agreed to consideration. We concluded that the written contract demonstrated that there was a bargained for agreement which recited good consideration. *See Nordwick*, 223 Mont. at 342, 725 P.2d at 1199.

¶27. The contract between the parties in this case created a relationship of "lender" and "approved dealer" for purposes of making FHA loans pursuant to HUD regulations. This relationship is evidenced by both the Dealer/Contractor Application, the dealer agreement, HUD regulations, and the course of conduct between the parties. The undisputed facts are that Majestic submitted an application to become an approved dealer. Green Tree then approved Majestic as a dealer and required Majestic to enter into the dealer agreement and an addendum to that agreement, both of which included terms which are expressly provided for by HUD regulations. *See* 24 C.F.R. § 201.27(a)(6), (a)(7), (b).

¶28. In order to become and remain an approved dealer which could assist its customers in their attempt to obtain FHA guaranteed mobile home loans, Majestic promised to operate pursuant to HUD regulations; something it was not otherwise obligated to do in the course of its business. Compliance with HUD regulations for purposes of the contractual relationship included maintaining a minimum net worth, opening its books and records to semi-annual inspections by Green Tree, providing financial statements to Green Tree, and permitting Green Tree to supervise its loan practices. *See* 24 C.F.R. § 210.27(a). Green Tree argues that Majestic was legally obligated to conform with HUD regulations anyway. However, it was only required to do so to maintain its approved dealer status; Majestic was free to forgo the option of assisting its customers with FHA financing. We hold that complying with HUD regulations and meeting other requirements of Green Tree financing constituted good consideration on the part of Majestic. Moreover, Majestic provided further consideration in the agreement by granting Green Tree a security interest in certain accounts and property it owned.

¶29. In return for Majestic's conformance to federal regulations it would not otherwise be obligated to conform to, and a security interest in Majestic's assets, Green Tree agreed to perform a service for Majestic; it agreed to review, and then either approve or reject, such credit applications as Majestic saw fit to submit on behalf of its customers. Just as importantly, Majestic was allowed to hold itself out to its customers as an approved dealer, which according to Larson, provided a competitive advantage in the manufactured home business. The establishment of the relationship was the intention of the parties, as evidenced by the application, the agreement, and the parties' conduct. While it is true that Majestic was not required to offer even a single contract to Green Tree, nor Green Tree to accept a single offered contract, the two parties entered a contractual relationship whereby they exchanged valuable consideration. The establishment of such a relationship is distinguishable from an indefinite requirements or outputs contract where there is no exchange of obligations and no establishment of a lender/dealer relationship.

¶30. We conclude that there is evidence of consideration for this contract pursuant to § 28-2-102, MCA, and therefore we conclude that the contract between Majestic and Green Tree is enforceable. We reverse the judgment of the District Court and reinstate Count IV of the complaint.

ISSUE 2

¶31. Did the District Court err when it dismissed the plaintiff's noncontract claims?

¶32. The District Court concluded that the complaint failed to state the noncontract claims with sufficient precision and therefore it dismissed those claims pursuant to the defendant's Rule 56 motion for summary judgment. On appeal the defendant contends that the District Court should be affirmed based on Rule 8(a) M.R.Civ.P., even though that was not the nature of its motion in the District Court, and even though its prior motion, brought pursuant to Rule 12(B)(6), was dismissed because it was unsupported by any brief.

¶33. Rule 56(c), M.R.Civ.P. states that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

**¶34. Rule 8(a), M.R.Civ.P., provides:**

A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

**¶35. It is well settled that "[a] complaint must put a defendant on notice of the facts the plaintiff intends to prove; the facts must disclose the elements necessary to make the claim; and the complaint must demand judgment for the relief the plaintiff seeks."** *Kunst v. Pass*, **1998 MT 71, ¶35, 288 Mont. 264, ¶35, 957 P.2d 1, ¶35 (citing** *Mysse v. Martens* **(1996), 279 Mont. 253, 266, 926 P.2d 765, 773). It must provide a defendant with notice and an opportunity to defend itself.** *See Kunst*, **¶36. In this case, Majestic asserted that Green Tree engaged in unfair business practices and unfair restraint of trade with actual fraud or malice, thereby causing Majestic damages.**

**¶36. The District Court dismissed the remaining claims as improperly pled. The facts alleged, are that Green Tree threatened to terminate Majestic's approved dealer status and the contract between the parties unless Majestic terminated Benner's employment; that Majestic refused to terminate Benner's employment; that Green Tree terminated its contract with Majestic; and that Majestic was injured as a result.**

**¶37. While the complaint, as counsel for Majestic concedes, may not be a model of notice pleading, the allegations therein were sufficiently precise and well supported to notify Green Tree of the factual basis for the tort claims against it. The substantive law regarding unfair business practices and unfair restraint of trade has not been briefed in the District Court or on appeal. Therefore, we express no opinion regarding the legal merit of the claims based on these facts. However, we conclude that those claims should not have been dismissed by summary judgment based simply on the manner in which they were pled. Accordingly, we reverse the judgment of the District Court and reinstate Majestic's tort claims.**

**¶38. The judgment of the District Court which granted Green Tree's motion for summary judgment and denied Majestic's motion for summary judgment is reversed. This case is remanded for further proceedings consistent with this opinion.**

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART