JUSTICE MCKINNON,
dissenting.
¶46 I disagree that the aboveground portions of the pivot irrigation system were a permanent fixture attached to Held’s land. I also disagree that a claim for unjust enrichment is precluded when ownership is determined by operation of statute, rather than pursuant to principles of contract law.
A. The record does not support a conclusion that the pivot irrigation system was a permanent and physical attachment to Held’s property.
¶47 I disagree with the Court’s conclusion that the aboveground portions of the pivot irrigation system are a fixture. First, the system does not meet the criteria under Schwend, where annexation is most clearly shown by characteristics consistent with permanent, physical attachment to the land. Schwend, ¶ 28. The record before us shows that the nature of a pivot irrigation system, and particularly the one at issue here, is, of necessity, mobile. These systems are mobile to an extent that if they are not correctly adjusted, they may be damaged by *113 obstacles in their path, as Held discovered when he failed to account for an obstructing fence, despite Welu’s warning. Even though these systems are typically custom-cut for an individual property, as they were here, there was evidence in the record that the aboveground portions of these systems are commonly removed and often disassembled and sold. In fact, prior to filing suit, Welu had already explored selling the irrigation system at issue here, and sought to use it on his other properties in Texas. Further, by the time Held ejected Agri from the land, Agri had already disassembled a portion of the system. Given these facts alone, I cannot see that the aboveground portions of the system exhibited characteristics of being permanently, physically attached to the land.
¶48 Second, to bolster its finding to the contrary, the Court conflates the intent of the parties with sufficient physical characteristics of permanence under Schwend: “There is no evidence in the record that the parties intended the pivot irrigation system to be moved to different locations on different fields.” Opinion, ¶ 20. Intent of the parties as to mobility has no bearing on the pivot’s physical characteristics. Additionally, in that same paragraph, the opinion notes that “there was no evidence the irrigation system at issue here had been used on other properties previously.” Opinion, ¶ 20. Essentially, the Court finds persuasive evidence that the system is permanently affixed from the fact that it was bought new, and not previously used. I cannot align with either of those rationales, and thus do not believe the system can be considered annexed under Schwend.[1] Welu’s aboveground pivot system, which was designed to move as it irrigates and was in the process of being dismantled, cannot reasonably be considered a permanent fixture to Held’s land.
¶49 Lastly, I disagree that the intent prong of Schwend’s fixture test is met here. The Court correctly acknowledges that Welu’s intent, as the installing party, bears the most weight. However, while I agree *114 that Welu meant to create “perennial hunting grounds through the use of irrigation!, |” Opinion, ¶ 26, it does not necessarily follow that this intent can be equated with Welu’s intent for the system to be a permanent fixture. I cannot find in the record evidence that he meant for the system to remain on the land for any longer than he was able and so disposed to hunt upon it. Indeed, Welu’s stated intent to sell the aboveground portions or use them on his other properties, bolstered in fact by Agri’s partial dismantling of those aboveground components, is evidence Welu always intended the system to be removable. An intent that an object remain for so long as a person wishes or is able to hunt—an intent subject to whim and fancy—does not equate to an intent that the object forever remain on the land. Given these analytical inconsistencies of the Court respecting both annexation and intent, it is my opinion that the aboveground portions of this pivot irrigation system do not constitute a fixture.
B. A claim for unjust enrichment is not precluded when ownership is determined by operation of statute, rather than pursuant to principles of contract law.
¶50 Even if the irrigation system is a fixture, however, I disagree too, that Welu should be precluded from restitution under the theory that Held was unjustly enriched. The Court states in ¶ 35 that, “[essentially, Welu asks this Court to hold that, even when there is a contract between the parties specifically relating to the property at issue in a proceeding, unjust enrichment should be an available remedy if the contract does not specifically mention who has permanent ownership of the property at issue. We decline to do so in this case.” Denying Welu the remedy of restitution under the theory of unjust enrichment, on the basis that the contract was indefinite or failed to mention ownership, contravenes well-established principles of equity that are evident in our own precedent and the Restatement of Restitution and Unjust Enrichment. Most importantly however, the rationale for denying Welu’s restitution is inconsistent with the findings of the lower court which have been affirmed through this Court’s fixture analysis.
¶51 The Court’s fixture analysis and the unjust enrichment issue are intertwined in a subtle way. Left out of the Court’s Opinion is the reason why there is a fixture analysis of the irrigation system in the first place. To be fair, the Court does note that the District Court found that because the irrigation system is determined to be a fixture, Held owns it. However, the Court does not explain the reason why this is so: It is by operation of law, and not as a matter of contractual interpretation. Pursuant to § 70-18-101, MCA, afixture installed to the *115 land of another belongs to the landowner in the absence of an agreement as to its removability, unless the owner of the land chooses to require the person to remove it. Thus, in the absence of an agreement, the landowner may elect whether to keep the fixture attached to the land or require that it be removed. Significantly, operation of the statute which occurs in the absence of an agreement, does not foreclose a claim of unjust enrichment when the landowner elects not to return the fixture.
¶52 Here, the District Court examined the contract between the parties; found that it had no term governing ownership or removability of the pivot irrigation system; determined that the irrigation system constituted a fixture; and then, as a result, declared the system owned by Held, even though Welu had purchased it. By affirming the District Court’s fixture analysis, this Court employed § 70-18-101, MCA, and necessarily found there was no agreement between the parties regarding ownership or removal of the pivot system. Nonetheless, when addressing Welu’s unjust enrichment argument, the Court reinjects principals of contract law by indicating the contract was missing an important term—ownership of the system—which precluded Welu’s claim of unjust enrichment. Opinion, ¶¶ 35-36. Section 70-18-101, MCA, however, determines ownership as a matter of law in the absence of an agreement between the parties—a significant distinction the Court fails to grasp. As a result, Welu’s unjust enrichment claim fails and Held gains a windfall in the form of a million dollar irrigation system which, as the trial court acknowledged in its findings of fact, was never meant to primarily benefit him. Welu, who was meant to be the primary beneficiary of the irrigation system, in turn gains nothing and is in fact deprived of the very property from which he was to benefit under the contract. Held gains a windfall where none was ever intended, to the detriment of Welu. Held is therefore unjustly enriched and Welu should be afforded restitution.
¶53 The inconsistency in the Court’s rationale underlying its ownership and fixture analysis is overlooked by the Court because it dismisses Welu’s equitable plea out of hand, based on an improperly applied rule of Pruyn.[2] I would instead reason in a manner consistent *116 with the District Court’s findings on the fixture issue: since the contract between the parties contemplated only maintenance of the system,[3] and not ownership of the system; and since ownership was in fact statutorily determined; there was no contract between the parties that would preclude an unjust enrichment analysis under Pruyn, ¶ 63. In the absence of a contract, “[a]n implied contract ... springs from principles of natural justice and equity, based on the doctrine of unjust enrichment.” Ragland v. Sheehan, 256 Mont. 322, 327, 846 P.2d 1000, 1004 (1993). I would therefore reach the issue of unjust enrichment left unexamined by the Court.
¶54 To reach Welu’s unjust enrichment claim would be consistent with the Restatement (Third) of Restitution and Unjust Enrichment, our own precedent, and the law in other jurisdictions. Our rule of Pruyn notwithstanding, the Restatement (Third) of Restitution and Unjust Enrichment clearly contemplates recovery in unjust enrichment when an existing agreement is indefinite.
A person who renders performance under an agreement that cannot be enforced against the recipient by reason of
(a) indefiniteness, or
(b) the failure to satisfy an extrinsic requirement of enforceability such as the Statute of Frauds, has a claim in restitution against the recipient as necessary to prevent unjust enrichment.
Restatement (Third) of Restitution and Unjust Enrichment, § 31 (2011) (emphasis added). The contract here was indefinite because it lacked the material terms of severability and ownership of the irrigation system. Further, even if, as the District Court concluded, Welu performed, but breached the contract, the Restatement still contemplates Welu’s recovery in § 36: “(1) A performing party whose material breach prevents a recovery on the contract has a claim in restitution against the recipient of performance, as necessary to prevent unjust enrichment.” Restatement (Third) of Restitution and Unjust Enrichment, § 36 (2011). Even if the issue was not outside of contract, these facts also comport with the Restatement (Second) of *117 Contracts, § 374, and cmt. (a) of the same:
(1) Subject to the rule stated in Subsection (2), if a party justifiably refuses to perform on the ground that his remaining duties of performance have been discharged by the other party’s breach, the party in breach is entitled to restitution for any benefit that he has conferred by way of part performance or reliance in excess of the loss that he has caused by his own breach.
(2) To the extent that, under the manifested assent of the parties, a party’s performance is to be retained in the case of breach, that party is not entitled to restitution if the value of the performance as liquidated damages is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss.
Cmt. (a) Restitution in spite of breach. The rule stated in this Section applies where a party, after having rendered part performance, commits a breach by either non-performance or repudiation that justifies the other party in refusing further performance. It is often unjust to allow the injured party to retain the entire benefit of the part performance rendered by the party in breach without paying anything in return. The party in breach is, in any case, liable for the loss caused by his breach. If the benefit received by the injured party does not exceed that loss, he owes nothing to the party in breach. If the benefit received exceeds that loss, the rule stated in this Section generally gives the party in breach the right to recover the excess in restitution.
Restatement (Second) of Contracts, § 374 (1981) (emphasis added). The Court admonishes our examination of the Restatement proposition above, but the Court transposes the position and situation of the parties and thus the Court’s analysis is fundamentally flawed. If, as the District Court acknowledged, Welu is the breaching party and there was still time for Held to have performed “but for Welu’s interference,”[4] (Opinion, ¶ 31), the Restatement, in both the body of § 374 and comment (a), clearly contemplates Welu’s recovery in restitution. Regardless, focusing as the Court does on a contractual analysis and what party breached the contract, while leaving unexamined the Restatement on Restitution and Unjust Enrichment, *118 misses the larger and much more important point—the unjust enrichment here arose not from the contract between the parties, but by operation of statute. With Held’s unjust enrichment occurring by operation of statute and thereby wholly outside of contract, it is in the end immaterial what party breached a contract that was indefinite as to the term of ownership.
¶55 Even were we to discount the Restatements, our precedent prior to Pruyn and Schwend have acknowledged that the harsh results rendered by operation of law against a party to a contract concerning a permanent improvement to land should not preclude that party’s recovery in restitution under a theory of unjust enrichment. “Where the labor or money of a person has been expended in a permanent improvement which enriches the property of another, under an oral agreement which cannot be enforced under the Statute of Frauds, that person is entitled to an award for the amount by which such improvements unjustly enriches the property.” Robertus v. Candee, 205 Mont. 403, 407, 670 P.2d 540, 542 (1983) (citing Smith v. Kober, 189 N.W. 377 (Neb. 1922); Restatement (Second) of Contracts § 375 (1981)). Although the Court distinguishes Robertus upon its facts, (Opinion, ¶¶ 37-38), the Court fails to appreciate the significance of Robertus and the proposition for which it is cited: without compensation for the additional value which improvements have conferred upon the property of another by operation of law, not contract, it is against conscience that one person shall be enriched to the cost and injury of another. Providing restitution in such circumstances, even to a contracting party who has a claim against the recipient of his performance, is also the well-settled and a general principle of equity in other jurisdictions. “The essential elements of a quasi-contract or quantum meruit claim are that the plaintiff provided to the defendant materials or services at the defendant’s request or with the acquiescence of the defendant, that the materials or services had reasonable value, and that the defendant, despite the demands of the plaintiff, has failed and refused to pay the reasonable value of such materials or services.” Berra v. Bieg Plumbing Co., Inc., 584 S.W.2d 116, 118 (Mo. Ct. App. 1979) (cited in Olathe Millwork Co. v. Dulin, 189 S.W.3d 199, 206 (Mo. Ct. App. 2006) (finding that there was no valid, enforceable contract between the parties where the agreement at issue was indefinite because it lacked essential terms).
¶56 Since I think it clear that both the District Court and this Court conclude there was no contract as to ownership of the pivot system, and ownership was in fact determined only on the basis of a statute, I would find Welu is not precluded from recovering in equity under a *119 theory of unjust enrichment, and that his plea as to unjust enrichment should be examined. We stated in Pruyn that:
Unjust enrichment is an obligation created by law in the absence of an agreement between the parties. In other words, courts have applied the theory of unjust enrichment when no contract exists between the parties, but a contract in law is implied. The doctrine of unjust enrichment is an equitable means of preventing one party from benefiting from his or her wrongful acts. Among other things, a claim of unjust enrichment requires a plaintiff to show the element of misconduct or fault on the part of the defendant or that the defendant somehow took advantage of the plaintiff
Pruyn, ¶¶ 63-64 (citations omitted) (emphasis added).
¶57 In my opinion, Pruyn would not preclude Welu’s recovery. The District Court found the following fact:
Unjust enrichment is an equitable means of preventing one party from benefiting by his or her wrongful acts, and, as such, requires a showing of misconduct or fault to recover. The irrigation system in question was placed on the defendants’ property by agreement of the parties. It is a fixture, a part of the real property under Montana law. There is no agreement permitting the plaintiff to remove any of it, as required by Montana law. The Defendants have not committed any wrongful act by retaining it.
District Court’s Findings of Fact, Conclusions of Law, ¶ 66 (emphasis supplied). The District Court erred because it failed to consider that, as Pruyn notes above, unjust enrichment does not always require a wrongful act. Unjust enrichment may also be found under Pruyn where it can be shown the defendant took advantage of the plaintiff. However, in my opinion, Held both committed a wrongful act, and took advantage of Welu. Held’s wrongful act arises from the fact that the statute governing the accession of fixtures to land allows the landowner to, at his option, cede the removability of the fixture. Held, as the incidental beneficiary of an irrigation system primarily meant to improve Welu’s hunting fortune, could have easily ceded the aboveground portions of the pivot irrigation system. The wrongful act requirement of Pruyn is thereby met: Held’s refusal to cede or pay Welu for those aboveground portions is a wrongful act. Acknowledging that pursuant to § 70-18-101, MCA, Held was entitled to elect whether to return the aboveground portion of the irrigation system or to keep it, does not transform this argument for Welu’s relief into a call for specific restitution, as the Court asserts. Opinion, ¶ 41. If Held chose to keep the system, as he apparently has, Welu is entitled to *120 restitution generally corresponding to the amount of its value under the theory of unjust enrichment.
¶58 Even if Held’s retention of the removable portions of the system is not what the Court would consider wrongful, Held is certainly taking advantage of Welu. Welu is rightly faulted for believing that his four sentence email would suffice to govern a complex million dollar transaction involving the property of another. The deficiency of his contract shows he either held an inordinate amount of trust in the goodwill of Held, or that he operated under an extreme ignorance of the law, both accession law and contract law. However, as a matter of equity and justice, Welu’s shortcomings in business prudence and legal matters should not serve to enrich Held to the tune of one million dollars when he was, as the trial court determined, merely an incidental beneficiary of Welu’s purchase.
¶59 I dissent.

 In Schwend, we observed that funds to purchase irrigation systems are obtained frequently through a government agency, which holds a purchase money security interest. While the record in these proceedings is silent as to the source of funding forthe irrigation system, it cannot seriously be contended that most farmers and ranchers in Montana would ever be able to obtain “the funds to purchase the irrigation pipe through a government agency, which [would hold] a purchase money security interest in the pipe[,]” if the pipe and aboveground portions of the system were destined to become part of the realty it served. This suggests that the irrigation systems are commonly seen in the agricultural and finance industries as removable in the event the underlying debt is not paid. Schwend, ¶ 33.

 Pruyn requires that to consider unjust enrichment, there must not be an agreement between the parties. Pruyn, ¶ 63 (citing Maxted v. Barrett, 198 Mont. 81, 87, 643 P.2d 1161 (1982)). See Bradkin v. Leverton , 26 N.Y.2d 192, 257 N.E.2d 643, 309 N.Y.S.2d 192 (1970); Fox v. Lummus Co., 524 F. Supp. 27, 29-30 (S.D.N.Y. 1981). At best, *116 this is a poorly articulated rule we incorporated from a New York Federal District Court ruling that does not comport with the rule in other jurisdictions or with the Restatement of Restitution: that restitution from unjust enrichment requires there must not be an adequate remedy at law available to the complainant.

 See fact 62 in Findings of Fact and Conclusions of Law of the District Court, where the court examines what it considers to be objective evidence of ownership, and outside the scope of the existing contract.

 In its findings of fact, the District Court found that Held did not perform his obligation to repair the system, ostensibly because Welu had instructed Agri to stop maintaining the system. This meant that “Held did not repair the pivot irrigation system to full operation during May or June 2012.”